**U.S. DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**
**CASE NO. 5:09-cv-00024**

**DANETTE BURNETT**                                                    **PLAINTIFF**

**v.**

**PINELAKE REGIONAL HOSPITAL, LLC**
**d/b/a JACKSON PURCHASE MEDICAL CENTER**                    **DEFENDANT**

### MEMORANDUM OPINION

This matter comes before the Court upon Plaintiff Danette Burnett's Motion for Partial Summary Judgment as to Liability (DN 18).  Defendant has responded (DN 23), and Plaintiff has replied (DN 26).  This matter is now ripe for adjudication.  For the reasons that follow, Plaintiff's Motion is DENIED.

Also before the Court is Defendant's Motion for Summary Judgment (DN 19).  Plaintiff has responded (DN 20), and Defendant has replied (DN 24).  This matter is now ripe for adjudication.  For the reasons that follow, Defendant's Motion is GRANTED.

### BACKGROUND

This matter arises out of an incident that occurred on September 25, 2008, and Plaintiff Danette Burnett's subsequent termination from her job at Defendant Pinelake Regional Hospital, LLC d/b/a Jackson Purchase Medical Center ("Hospital").  Burnett was employed as a registered nurse at the Hospital from October 31, 2000, until October 2, 2008.

On September 25, 2008, Burnett was working in the Hospital's Same Day Surgery Department and was assigned as the recovery nurse for a male endoscopy patient.  Dr. Anita Torok was the physician who performed the endoscopy and Linda Riley was the Registered Nurse Anesthetist who assisted in the procedure.  At 9:40 a.m., the patient returned from his

endoscopy procedure to his room for recovery and discharge.  Burnett took his vital signs, propped him up in his bed and returned to the nurses' station.  Dr. Torok then approached the nurses station, asked who was taking care of the patient, and stated that she believed the patient wants drugs and that he is having chest pain.  Dr. Torok then stepped around the corner for a moment, returned to the nurses' station, and ordered Burnett to give the patient a nitroglycerin tablet and an electrocardiogram ("EKG").

While the parties do not dispute what Dr. Torok said, Burnett testified that she did not understand her order at the time because Dr. Torok did not speak English clearly.  Burnett followed Dr. Torok to the Endoscopy Suite, where Riley was also present, and questioned her about the order.  The parties' characterizations of this conversation are very different.  Burnett states that she followed Dr. Burnett to clarify an order that she did not understand.  When Dr. Torok repeated her order, Burnett states that she advised her that the normal practice was to send patients who complain of chest pain to the emergency room in order to clarify that Dr. Torok did not want her to follow that practice after carrying out the order.  Burnett states that she treated Dr. Torok respectfully and professionally throughout the exchange.  The Hospital states that Burnett questioned Dr. Torok's orders in a rude, disrespectful and insubordinate manner.  The Hospital states that Burnett told Dr. Torok and Riley that they were not cardiologists and demanded the patient be taken to the ER because that was protocol.

After this conversation, at approximately 9:55 a.m., Burnett returned to the patient's room.  She asked the patient about his chest pain and explained that she needed to do an EKG and give him nitroglycerin.  The patient denied any chest pain and refused the treatment.  Burnett addressed the matter a second time, but the patient adamantly denied having chest pain.  Burnett

2

then explained Dr. Torok's order and told the patient that he should go to the emergency room later if he had any chest pain.

Later that day, Riley complained to the Endoscopy Suite supervisor, Connie Jackson, about Burnett's behavior. Jackson, in turn, reported it to the Hospital's Chief Nursing Officer, Julia Grove, who initiated an investigation. The investigation consisted of interviews with Riley and three other individuals Riley identified as present in the endoscopy room during the exchange between Burnett and Dr. Torok. Burnett was also interviewed. On October 2, 2008, Burnett was terminated. The Hospital states that it terminated Burnett because she confronted Dr. Torok and questioned her orders and judgment in a disrespectful and insubordinate manner, failed to assess the patient immediately and failed to document Dr. Torok's orders properly in the patient's chart. Burnett states that she was terminated for failing to follow the order to give the patient an EKG and nitroglycerin, which she could not legally have done because he refused the treatment.

## STANDARD

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact." *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is whether

the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

Finally, while Kentucky state law is applicable to this case pursuant to *Erie Railroad v. Tompkins*, 304 U.S. 64 (1938), a federal court in a diversity action applies the standards of Fed. R. Civ. P. 56, not "Kentucky's summary judgment standard as expressed in *Steelvest, Inc. v. Scansteel Serv. Ctr., Inc.*, 807 S.W.2d 476 (Ky. 1991)."  *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).

## ANALYSIS

In Kentucky, "[t]he general rule is that an employer may discharge an 'at-will employee for good cause, for no cause, or for a cause that some might view as morally indefensible.'"  *Ne. Health Mgmt., Inc. v. Cotton*, 56 S.W.3d 440, 446 (Ky. Ct. App. 2001) (quoting *Firestone Textile Co. Div., Firestone Tire & Rubber Co. v. Meadows*, 666 S.W.2d 730, 71 (1983)).  One exception to this general rule, allowing an individual to bring a wrongful termination action, is when "the alleged reason for the discharge of the employee was the failure or refusal to violate a law in the course of employment."  *Grzyb v. Evans*, 700 S.W.2d 399, 402 (1985) (citation

4

omitted).  "[A]n employee claiming wrongful discharge due to a refusal to violate the law must

show an affirmative request to him/her by the employer to violate the law."  *Welsh v. Phoenix*

*Transp. Servs., LLC*, No. 2007-CA-001231-MR, 2009 WL 2475206, at *4 (Ky. Ct. App. Aug.

14, 2009).

Even assuming Burnett would have violated the law by carrying out Dr. Torok's order

after the patient had refused treatment,[1] she has not provided any evidence that anyone at the

hospital requested that she do so.  There is no evidence that the Hospital wished Burnett to

perform an EKG and give the patient nitroglycerin after he refused the treatment.  Further,

Burnett's interpretation of the Hospital's stated reasons for terminating her is not reasonable.

Although evidence states that the Hospital terminated Burnett due to "Insubordinate Behavior–

Employee did not carry out orders of licensed professional which were given by Anesthesia and

the physician" and "Insubordination due to not carring [sic] out physician's orders," this does not

show that the Hospital terminated Burnett for not carrying out Dr. Torok's orders after the

patient refused treatment.

In describing the incident that led to the discharge, the Hospital said "Physician ordered

EKG and nitro be given to patient with chest pain.  Employee did not perform orders.  She told

the doctor that patient needed to go to the ER.  Orders are to be performed when ordered by

physician."  Evidence demonstrates that the Hospital terminated Burnett not because she did not

perform an EKG and give nitroglycerin to the patient after he refused treatment, but because she

did not immediately attempt to carry out Dr. Torok's orders when she first received them at the

---

[1] While the Court believes that this assumption may give Burnett a too favorable
resolution of legal arguments the Court will make this assumption.

nurses station and instead questioned Dr. Torok in an insubordinate manner.

While the facts regarding this confrontation are disputed, they are not material to the Court's decision. Whether or not Burnett was insubordinate or merely attempting in good faith to clarify orders is not material to whether Burnett was terminated for refusing to violate a law in the course of employment. The Hospital's investigation revealed Burnett was insubordinate. No one asked Burnett to carry out Dr. Torok's orders after the patient refused treatment. A trier of fact could not reasonably find that Burnett was terminated for not carrying out orders after the patient refused treatment.

The termination was unfortunate and possibly the result of a misunderstanding. It could have been the result of all parties attempting to provide good care. Regardless, the Court does not believe there is sufficient evidence that the Hospital requested Burnett to violate the law.

## CONCLUSION

For the foregoing reasons, Plaintiff Danette Burnett's Motion for Partial Summary Judgment as to Liability (DN 18) is DENIED and Defendant's Motion for Summary Judgment (DN 19) is GRANTED.